CLERK'S OFFICE U.S. DISTRICT COURT AT
ROANOKE, VA
FILED
1/9/2025
LAURA A. AUSTIN, CLERK
BY: z/C Kemp
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Case No. 4:24-cr-00009-001 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| RICHARD ELIJAH JACOBS, | ) | By: Hon. Thomas T. Cullen |
| | ) | United States District Judge |
| Defendant. | ) | |

After a concerned citizen called 911 to report a white Jaguar with two black males brandishing "AK47s" in Martinsville, Virginia, police officers quickly located the vehicle in question. Minutes later, after the officers encountered the driver of the vehicle, Defendant Richard Elijah Jacobs, who was standing outside the vehicle, they saw a firearm in the backseat of the car. Once Defendant confirmed he was a felon, officers placed him under arrest. A subsequent search of the vehicle uncovered more firearms in the car and drugs in the trunk. Defendant has moved to suppress all items uncovered during the search of his car. Because the search was authorized incident to arrest (and because the police had ample probable cause to search the vehicle), his motion will be denied.

## I.

While there may be some dispute about collateral issues, the relevant facts are not subject to reasonable debate. On February 4, 2024, police received a 911 call about a "white Jaguar" with "two young black guys in it . . . light-skinned black guys, young boys" pulling out "big guns, like AK47s" at citizens. (Mem. Opp. Mot. Suppress Ex. 1 [hereinafter "911 Call"]

[ECF No. 46].)[1] The "concerned citizen" who called 911 said that the identified individuals' actions "scared the shit outta" her. (*Id.*) She saw some "guys running" from the encounter, so she left in fear and called 911. (*Id.*)

A short time later, Cpl. Kenney with the South Boston Police Department saw a white Jaguar in a parking lot near the area described by the 911 caller. He observed a young black male get out of the car and walk into a Shoppers Value grocery store, and he observed Defendant standing outside of the car. He approached Defendant and initiated conversation. (*See generally* Mem. Opp. Mot. Suppress Ex. 2 at 1:01–4:13 [hereinafter "Kenney BWC"].) He asked whether Defendant was "just on Edmond Street," the street on which the 911 caller reported seeing the incident; Defendant said, "No sir." (*Id.* at 1:15–1:23.) Cpl. Kenney then asked if there were any weapons in the vehicle; Defendant said, "No sir." (*Id.* at 1:23–1:25.) When Cpl. Kenney asked for Defendant's identification, Defendant responded that he didn't have one, although he wrote down his name and provided his birthdate and social security number to Cpl. Kenney. (*Id.* at 1:36–2:24.) Cpl. Kenney again asked if there were any weapons in the car, and Defendant said no. (*Id.* at 1:37–1:40.) Cpl. Kenney then told Defendant that they had received a call about a white Jaguar "heading down Edmond Street . . . flashing weapons." (*Id.* at 1:40–1:45.) Cpl. Kenney patted Defendant down for weapons, but all he found were his keys. (*Id.* at 2:15–2:26.) Both Cpl. Kenney and Defendant remained measured and polite throughout their entire encounter.

---

[1] In opposing the motion to suppress, the government has relied on an audio recording of the 911 Call as well as the body-worn cameras of the responding officers. These exhibits are on file with the clerk. (*See* ECF No. 46.) References to the time of any video are to the time on the file, not the time stamp on the recording. The court notes that the government identified both the 911 Call and Cpl. Kenney's body-worn camera as Exhibit 1 in its brief in opposition to Defendant's motion to suppress, so the court has adopted the file names as exhibits: the 911 Call is Exhibit 1, and the respective body-worn camera videos are Exhibits 2–5.

In the meantime, Sgt. Trevor Richardson and Officer Brandon Coates arrived on the scene. (*Id.* at 2:45.) While Defendant was talking to Cpl. Kenney (and having dispatch run Defendant's information and the car's registration), Sgt. Richardson and Officer Coates looked through the windows of Defendant's car and saw a firearm on the back floorboard. (*Id.* at 2:47–3:55; Mem. Opp. Mot. Suppress Ex. 3 at 0:30–1:48 [hereinafter "Richardson BWC"].) At approximately the same time, Defendant asked Cpl. Kenney if he could go inside or if he was "being detained or anything like that." (Kenney BWC at 3:55–4:02.) Cpl. Kenney immediately asked Sgt. Richardson and Ofc. Coates, "Y'all see anything, is he good?" (*Id.* at 3:57–3:58.) Sgt. Richardson asked Defendant, "Are you a felon?" (*Id.* at 4:07–4:10; Richardson BWC at 1:48–1:52.) After a brief moment of hesitation, Defendant nodded his head "yes." (Kenney BWC at 4:10–4:12.) Sgt. Richardson then said, "Hook him up," and Defendant was placed under arrest. (*Id.* at 4:14; Richardson BWC at 1:54.) Defendant asked, "Hook me up for what," and Sgt. Richardson responded, "That AR behind that seat right there." (Kenney BWC at 4:15–4:19; Richardson BWC at 1:57–2:00.) A search of Defendant's person uncovered $851 in cash, and a subsequent search of the car uncovered more firearms in the car and drugs in the trunk.

## II.

"In deciding a motion to suppress, the district court is empowered to make findings of fact, and conclusions of law." *United States v. Adkinson*, 191 F. Supp. 3d 565, 568 (E.D. Va. 2016) (citing *United States v. Stevenson*, 396 F.3d 538, 541 (4th Cir. 2005)). "At a hearing on a motion to suppress, the credibility of the witness and the weight to be given the evidence, together with the inferences, deductions[,] and conclusions to be drawn from the evidence,

are all matters to be determined by the trial judge." *United States v. Walker*, 933 F.2d 812, 815 (10th Cir. 1991). A defendant has the burden of proof on his motion to suppress but, once he establishes a basis for his motion, the burden shifts to the government to justify its actions. *See United States v. Matlock*, 415 U.S. 164, 177–78 & n.14 (1974); *United States v. Dickerson*, 655 F.2d 559, 561 (4th Cir. 1981). "The government bears the burden of proof in justifying a warrantless search or seizure," *United States v. McGee*, 736 F.3d 263, 269 (4th Cir. 2013) (citing *Welsh v. Wisconsin*, 466 U.S. 740, 749–50 (1984); *United States v. Watson*, 703 F.3d 684, 689 (4th Cir. 2013)), and it must justify its search by a "preponderance of the evidence," *see Matlock*, 415 U.S. at 177 n.14 (noting that "the controlling burden of proof at suppression hearings should impose no greater burden than proof by a preponderance of the evidence").

### III.

The relevant law that governs Jacobs's motion is well settled. There is no doubt that, on February 4, police conducted a search of Defendant's car, and "[t]he Fourth Amendment generally requires police to secure a warrant before conducting a search." *Maryland v. Dyson*, 527 U.S. 465, 466 (1999). But there are certain well-established exceptions to the Fourth Amendment's warrant requirement. *See Flippo v. West Virginia*, 528 U.S. 11, 13 (1999). For example, police do not need a warrant to seize evidence that is in "plain view" and whose incriminating character is immediately apparent. *See United States v. Davis*, 690 F.3d 226, 233 (4th Cir. 2012). But absent an exception, a warrant is required, and "evidence obtained in violation of the Fourth Amendment may be suppressed under the exclusionary rule." *United States v. Banks*, 482 F.3d 733, 738 (4th Cir. 2007) (citing *United States v. Perez*, 393 F.3d 457, 460

(4th Cir. 2004)). One prominent, and relevant, exception applicable to this case is automobile searches.

"There is a well-established exception to [the warrant] requirement . . . for automobile searches." *United States v. Kelly*, 592 F.3d 586, 589 (4th Cir. 2010). Under this exception, "[i]f a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment . . . permits police to search the vehicle without more." *Id.* (quoting *Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996) (per curiam) (brackets in original)). "The scope of a search pursuant to this exception is as broad as a magistrate could authorize. Thus, once police have probable cause, they may search every part of the vehicle and its contents that may conceal the object of the search." *Id.* at 590 (cleaned up). "The authority to search under the automobile exception extends to the trunk of an automobile." *Ridley v. United States*, No. 2:12cv563, 2013 WL 12344624, at *6 (E.D. Va. Aug. 14, 2013) (citing *United States v. Nixon*, 396 F. App'x 1, 3 (4th Cir. 2010) (per curiam) (unpublished)).

"Probable cause requires only 'a fair probability,' and not a prima facie showing, that 'contraband or evidence of a crime will be found in a particular place.'" *United States v. Bosyk*, 933 F.3d 319, 325 (4th Cir. 2019) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). Probable cause, in other words, is "not a high bar," and law enforcement officers are not obligated to "rule out a suspect's innocent explanation for suspicious facts." *District of Columbia v. Wesby*, 583 U.S. 48, 57, 61 (2018). The government has the burden of proving that the automobile exception applies. *See United States v. Jeffers*, 342 U.S. 48, 51 (1951).

Here, once the officers saw the firearm in Defendant's car and he confirmed that he was a convicted felon, they had probable cause to arrest him for possession of a firearm by a

convicted felon. Once he was placed under arrest, they were justified in searching his vehicle as a search incident to arrest. *See Arizona v. Gant*, 556 U.S. 332, 343 (2009) ("[W]e also conclude that circumstances unique to the vehicle context justify a search incident to arrest when it is 'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.'" (quoting *Thornton v. United States*, 541 U.S. 615, 632 (2004) (Scalia, J., concurring in the judgment))). The officers were aware that a white Jaguar with two young black men in it were alleged to have been brandishing firearms nearby. They quickly located a white Jaguar with two black males in it and, upon review of the automobile, saw a firearm visible in the back of the car. Defendant confirmed he was a felon, and therefore they had probable cause to arrest him and search his car for evidence related to the crime of arrest. Everything that allegedly came after is simply irrelevant to this analysis.[2]

Once there was probable cause to arrest Defendant—and he apparently concedes that there was—the police were authorized to search wherever it was "reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle." *Gant*, 556 U.S. at 343 (internal quotation omitted). Because Defendant was arrested for being a felon in possession of a firearm, it was reasonable for the officers to believe that the automobile—including, possibly, the trunk—contained more firearms. Moreover, the 911 caller expressly stated that more than one firearm had been displayed by the occupants of the white Jaguar. The officers only saw one, and they had yet to locate the passenger to determine whether he had another

---

[2] While Cpl. Kenney's comment to Defendant that if he did not relinquish his keys so that the officers may retrieve the firearm or they would obtain a warrant might affect the validity of a consent search, it does not matter here. Prior to this statement, the officers had ample probable cause to arrest Defendant and search the car, so Cpl. Kenney's request, even if it solicited consent under duress, is irrelevant.

firearm. Moreover, by the time Cpl. Kenney encountered Defendant, he was already standing outside the car, making it more plausible that he had accessed the trunk before the officer's arrival. But, in any event, the officers had more than enough evidence to suspect that multiple firearms were in that automobile, and it was reasonable to believe that additional firearms could be located in the trunk because, as the body-worn camera footage establishes, they were not in plain view in the passenger compartment. *Cf. Nixon*, 396 F. App'x at 3 ("Given the narcotics found on Nixon's person and in the passenger compartment of the vehicle he drove, the officers also had probable cause to search the vehicle's trunk under the 'automobile exception' to the warrant requirement.")

Insofar as Defendant challenges the scope of the search, his argument is without merit. Regardless of whether Defendant consented to a limited search or not, the officers had probable cause to search the vehicle, and that included the trunk because firearms—the object of the search—could have been there. *See United States v. Ross*, 456 U.S. 798, 824 (1982) ("The scope of a warrantless search of an automobile thus is not defined by the nature of the container in which the contraband is secreted. Rather, it is defined by the object of the search and the places in which there is probable cause to believe that it may be found.").

At oral argument on the motion, Defendant apparently recognized that his bid to suppress all the evidence uncovered in the car was futile and abandoned his challenge to the search of the passenger portion of the automobile, but persisted in his argument that *California v. Acevedo*, 500 U.S. 565 (1991), and *United States v. Carter*, 300 F.3d 415 (4th Cir. 2002), require a separate probable cause determination to justify a search of the trunk. But that argument misapplies the holding in those cases (and directly contravenes some of the precedent cited

above). In *Acevedo*, the Supreme Court held that, when police have probable cause to search a package that is in a vehicle, that probable cause does not extend to the entire vehicle; rather, "police may search an automobile and the containers within it where they have probable cause to believe contraband or evidence is contained." *Acevedo*, 500 U.S. at 580. That is simply inapplicable here. Police had probable cause to believe that multiple firearms were in the automobile; the 911 caller stated as much. They did not suspect—as would trigger the scope limitations recognized in *Acevedo* or *Carter*—that a discrete container *within* the automobile contained the contraband at issue. And Defendant confirmed that he was a felon, meaning his possession of any firearm was unlawful. *See* 18 U.S.C. § 922(g)(1); Va. Code Ann. § 18.2-308.2(A)(i). At that point, the police had probable cause to search the vehicle for firearms and were authorized to search wherever they had reason to believe[3] that evidence may be found. *See United States v. Hunt*, No. 23-1616, 2024 WL 50464, at *1 (7th Cir. Jan 4, 2024) ("When conducting a search incident to arrest, police may search all areas in the vehicle in which evidence of criminal activity may be found, including trunks and glove compartments . . . ." (citing *Gant*, 556 U.S. at 346–47)). *Accord United States v. Webb*, No. 4:22-cr-00075, 2023 WL 3628414, at *13 (D. Utah May 24, 2023) (finding the search of a trunk to be a lawful search incident to arrest when the defendant was arrested for violation of a state's open-container law, and holding that "[o]nce probable cause to search a vehicle is established, the scope of the search encompasses the entire vehicle, including the trunk and 'all containers therein that

---

[3] "While the Court [in *Gant*] did not flesh out the reasonable-to-believe standard, a number of appellate courts have concluded that it appears to require a lesser quantum of suspicion than probable cause, and probably is akin to the reasonable suspicion standard required to justify a *Terry* search." *United States v. Kinloch*, No. CR420-082, 2021 WL 3698899, at *6 (S.D. Ga. July 27, 2021), *report and recommendation adopted by* 2021 WL 3700721 (S.D. Ga. Aug. 19, 2021) (internal quotation omitted).

might contain contraband'" (quoting *United States v. Chavez*, 534 F.3d 1338, 1345 (10th Cir. 2008)); *United States v. Balkissoon*, 579 F. Supp. 3d 367, 373–74 (E.D.N.Y. 2022) (finding search of a backpack in the backseat of a car was permissible because "[i]t was reasonable for the officers to believe that evidence relevant to the crime of arrest—more marijuana or paraphernalia—would be found"); *United States v. Watson*, No. 17-cr-00381-2, 2018 WL 4181505, at *1 (N.D. Ill. Aug. 31, 2018) (denying motion to suppress a firearm recovered from the trunk of an automobile in which the defendant was a passenger after the vehicle was pulled over by officers who suspected shots had been fired from the car "minutes earlier"); *United States v. McMillan*, No. 1:15-CR-305, 2016 WL 6834007, at *3 (M.D. Penn. Nov. 21, 2016) (finding a search incident to arrest wherein drugs and drug paraphernalia were found on the person of a driver who fled his vehicle justified the search of the trunk where more drugs were found); *United States v. Ewing*, No. 13-40005-JAR, 2013 WL 4082717, at *5 (D. Kan. Aug. 13, 2013) (finding that the search of a trunk was justified after officers uncovered two digital scales, one with residue on it, in the passenger compartment of a vehicle).

**IV.**

In sum, because it was unlawful for Defendant to possess a firearm, once officers discovered one in the car he was driving, they were authorized to search the car—and any portion of the car—where more firearms may have been found. Because the trunk of an automobile could easily contain a firearm, the search of the trunk was valid.[4] Defendant's motion to suppress will be denied.

---

[4] As noted, at oral argument, Defendant abandoned his challenge to the search of the passenger compartment of the car.

The Clerk is directed to forward a copy of this Memorandum Opinion and the accompanying Order to the parties.

**ENTERED** this 9th day of January, 2025.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE